IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARRIO FACESON,

    Plaintiff,

    v.

FLAT BRANCH MORTGAGE,

    Defendant.

Case No. 23-2270-DDC-ADM

## MEMORANDUM AND ORDER

On July 17, 2024, the court ordered pro se plaintiff Marrio Faceson ("Faceson") to fully and completely respond to defendant Flat Branch Mortgage, Inc.'s ("Flat Branch") requests for production of documents, requests for admissions, and interrogatories. (ECF 40, at 4.) The court also ordered Faceson to show cause why he should not be required to pay Flat Branch's reasonable expenses, including attorneys' fees, incurred in filing its motion to compel. (*Id.*) Faceson did not comply with the court's order compelling him to respond to Flat Branch's discovery requests, and he did not file a response to the court's order to show cause. Flat Branch then filed a motion for sanctions asking the court to dismiss this case for Faceson's noncompliance. (ECF 43.) Faceson also did not file a response to this motion.

For the reasons explained below, the court denies Flat Branch's motion. The court is persuaded that Faceson is culpable for his failure to comply with his discovery obligations and that this has prejudiced Flat Branch and interfered with the judicial process by unilaterally halting this case. However, the court is not convinced—at least not quite yet—that the prejudice to Flat Branch cannot be mitigated or that that any lesser sanction would not be effective to prod Faceson into compliance with his discovery obligations.

**I.     BACKGROUND**

Faceson filed this action against defendants Flat Branch and one of its employees, Sarah Craig ("Craig"), seeking "A VERIFICATION OF DEBT ELSE RELEASE OF CLAIM" with respect to a promissory note on his property. (ECF 1, at 4.) Defendants initially filed a motion to dismiss the complaint. (ECF 9.) Faceson did not timely respond to the motion to dismiss, so the district judge ordered Faceson to show cause why the court should not consider and rule on defendants' motion to dismiss as uncontested. (ECF 10.) Faceson did not respond, but the court noted that the docket did not reflect that the show-cause order was mailed to Faceson. (ECF 11.) So, in case Faceson did not receive the order, the court directed the clerk to mail both that order and the show-cause order to Faceson, and the court gave Faceson another opportunity to respond to the show-cause order. (*Id.*) Faceson filed a response titled "Notice to Dismiss Their Motion and Motion to Compel My Motion," which the clerk interpreted as both a response to the motion to dismiss and a motion to compel production of documents. (ECF 12, 13.) The court denied Faceson's motion seeking to compel defendants' production of documents because the motion was premature. (ECF 14.) As the court explained, the court had not yet issued an Initial Order Regarding Planning and Scheduling directing the parties to participate in a planning conference pursuant to Fed. R. Civ. P. 26(f), so discovery had not yet commenced. (ECF 14 (citing FED. R. CIV. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f).")).)

Flat Branch then sought to withdraw its motion to dismiss and filed a separate answer to the complaint and counterclaim for declaratory judgment. (ECF 15, 17.) The court ultimately granted the motion to dismiss the claims against Craig and granted Flat Branch's motion to withdraw its motion to dismiss. (ECF 19, 20.) About this same time, Faceson filed a confusing

2

document that was again titled "Notice to Dismiss their Motion and Motion to Compel My Motion" that included a handwritten addition to the title: "& Request for Compensation." (ECF 18.) The clerk construed this document as Faceson's answer to Flat Branch's counterclaim. (*Id.*) Flat Branch filed a reply and objection to the document or, alternatively, a motion for more definite statement because it was unclear what purpose the document served. (ECF 21.) The court then issued an order validating Flat Branch's confusion, but explaining that, regardless of whether Faceson intended his filing to be an answer to the counterclaim, a discovery request, or a motion to compel, it was not an operative motion and/or pleading to which Flat Branch needed to respond. (ECF 23.) About this same time, the court issued an Initial Order Regarding Planning and Scheduling, thus triggering the parties' discovery obligations. (ECF 22.) In the month or so thereafter, Faceson filed or attempted to file more miscellaneous documents that did not appear to be motions or responses, making it difficult to discern the purpose of the documents. (*See* ECF 24, 25, 27, 28.)

On May 9, 2024, the court conducted a scheduling conference by phone. Faceson did not appear. Instead, his wife Mercy Faceson attended the scheduling conference and reported that her husband was recovering from a recent medical procedure. (ECF 31, at 1.) As the court noted in the scheduling order issued after the scheduling conference, "[i]n the interests of moving this case forward efficiently, the court proceeded with the scheduling conference despite Mr. Faceson's non-appearance, given that he already had an opportunity to provide input on the parties' proposed scheduling order, had notice of the scheduling conference, and did not request a continuance of the scheduling conference." (*Id.*) The court then entered a scheduling order setting various pretrial deadlines, including a discovery completion deadline of August 15. (ECF 31.) Shortly thereafter, the court entered an order cautioning Faceson that, because he is the only named plaintiff in this

3

action and his wife Mercy Faceson is not an attorney and does not have the necessary qualifications, she cannot assume the responsibilities and duties of a practicing lawyer on his behalf.  (ECF 32.)  Prior to this order, Mercy Faceson had signed and submitted a number of documents and filings to the court on behalf of plaintiff.  (*See, e.g.*, ECF 7, 12, 13, 18, 24, 27, 28, 31.)

During the three months after the scheduling conference, Faceson did not appear or file anything with the court.  During this same time period, Flat Branch was pursuing written discovery from Faceson.  When Faceson failed to serve timely responses to Flat Branch's discovery requests served on May 13, Flat Branch's counsel sent him a letter via email and U.S. mail regarding the overdue discovery responses, reminding Faceson of the discovery cutoff date in the scheduling order, and requesting dates and times for the parties to meet and confer.  (ECF 38 ¶¶ 1-2; ECF 38-1.)  In response, Faceson sent Flat Branch what he called a "good faith" settlement offer[1] and incomplete or evasive answers and improper objections to Flat Branch's interrogatories.  (ECF 38 ¶¶ 3-4; ECF 38-2 & 38-3.)  Faceson did not provide any responses to Flat Branch's requests for production of documents and requests for admissions.  (ECF 38 ¶ 5; ECF 38-1.)  On June 17, Flat Branch's counsel emailed Faceson another letter pointing out that Faceson had not timely served responses to the document requests and requests for admission, notifying Faceson that his responses to the interrogatories were "not in good form," and again requesting dates and times to meet and confer or Flat Branch would seek the court's assistance.  (ECF 38 ¶ 6; ECF 38-4.)  The

---

[1] In mid-June, the court received a document via U.S. mail from Faceson that appeared to be a confidential settlement offer.  The court cautioned Faceson that such a document should not be filed or submitted to the court and directed the clerk to return the document to Faceson so he could submit it directly to Flat Branch's counsel.  (ECF 33.)  The settlement offer Faceson mailed to the court (ECF 33) appears to be the same document Faceson sent to Flat Branch's counsel (ECF 38-2) but for the addressee.

4

parties then exchanged more emails in which Flat Branch requested that Faceson provide the discovery responses and documents requested or participate in a discovery conference with the court, which Faceson refused to do until Flat Branch provided a counteroffer. (ECF 38 ¶ 7; ECF 38-5.)[2]

When the parties made no progress in their meet-and-confer discussions, on June 24, Flat Branch requested a discovery conference to discuss Faceson's incomplete discovery responses. The court responded the same day to propose four different dates for the hearing. Faceson never responded to the court's multiple emails asking about his availability on those dates, so the court eventually set the conference for July 2 at 11:00 a.m. (ECF 35.) After business hours on Monday, July 1, Faceson notified the court that he would not be able to attend the conference because both he and his wife were having "medical issues" that precluded participation in the conference; Faceson suggested that he "touch base" with the court "the middle of next week to discuss another date" for the conference. The court convened the discovery conference on July 2 as scheduled. (ECF 36.) Faceson did not appear. (ECF 37.)

During the conference, the court found that Flat Branch had satisfied the requirements of D. Kan. Rules 37.1 and 37.2 and therefore directed Flat Branch to proceed with filing its motion to compel. In addition, in an order following the discovery conference, the court cautioned Faceson that, even as a pro se litigant, he is required to engage in the discovery process in compliance with the Federal Rules of Civil Procedure and this court's local rules. (ECF 37.)

---

[2] These emails exchanged with Flat Branch's counsel come from Mercy Faceson's email account (*see* ECF 38-5) despite the court's May 22 warning that Mercy Faceson would not be allowed to participate in this proceeding because she is neither a plaintiff nor an attorney and thus cannot assume the responsibilities and duties of a practicing lawyer on his behalf. (ECF 32.)

That same day, Flat Branch filed its motion to compel Faceson's discovery responses, along with an affidavit of Flat Branch's attorney supporting the factual allegations in the motion. (ECF 38, 39.) Faceson did not respond to the motion, so the court granted the motion to compel as unopposed. (ECF 40, at 4.) The court ordered Faceson to respond to Flat Branch's discovery requests by July 31 and to file a written response by August 7 explaining why he should not be required to pay Flat Branch's reasonable expenses, including attorneys' fees, incurred in filing its motion to compel. (*Id.* at 4-5.) The court warned Faceson that if he failed to serve his discovery responses by July 31 or failed to file his response to the court's show-cause order by August 7, he could be subject to further sanctions, including an order dismissing his case. (*Id*. at 5.)

Faceson received a copy of the court's order by certified mail on July 24. (ECF 41.) That same day, apparently in response to the court's order, Faceson served a document on Flat Branch that appears to be Faceson's supplemental responses to some (but not all) of Flat Branch's interrogatories. (ECF 43 ¶ 2; ECF 43-1.) Faceson did not provide any responses to Flat Branch's document requests or requests for admission. Even though Faceson did serve supplemental interrogatory responses, they are deficient for several reasons. First, Faceson's response that he "plead[s] the 5th" ((ECF 43-1, at 1, ROG No. 2) is not a proper objection because the court already ruled that all objections are deemed waived due to Faceson's failure to serve timely, proper objections to Flat Branch's written discovery when they were due. (ECF 40, at 4.)[3] Second, the supplemental responses address only some, but not all, of the interrogatories. Faceson did not include supplemental responses for ROG Nos. 3-5 or 9-11. (ECF 43-1.) Third, some of the

---

[3] For the record, Faceson's previous objections and responses in his June interrogatory responses that object because the information is "private" (e.g., ROG Nos. 2, 3, 4) or just state "objection" with no explanation for the objection (e.g., ROG Nos. 6, 7) were not proper when made.

6

supplemental answers appear to be nonresponsive or incomplete. For example, in addition to Faceson's improper "plead the 5th" response to ROG No. 2, he supplemented his response to ROG No. 14—which requests that Faceson "state each fact you intend to rely upon to establish the position that you have no obligation to make any payment of monies to the Defendant"—to state that he "sent an offer" about what he wanted but Flat Branch did not reply. (ECF 43-1, at 3.) But Faceson's settlement offer and Flat Branch's failure to provide a counteroffer is not responsive to the interrogatory. As another example, ROG No. 8 asks if Faceson "den[ies] the genuineness of [his] signature on the Mortgage," and, if so, to state all the reasons he contends the mortgage was not signed by him. Faceson responds "signed by living soul & man &/or woman in the capacity of the secured creditor." (ECF 43-1, at 2.) This response does not state whether he denies the genuineness of his signature. Some of his other responses are likewise confusing but appear to at least attempt to answer the interrogatories. For example, ROG No. 7 asks whether Faceson and his wife "execute[d] a Mortgage to secure the repayment of the Note." In response, Faceson appears to acknowledge execution with the caveat that he was "under duress and coercion to get the House or not" and that he executed it under "false pretense." (ECF 43-1, at 2.)

All in all, Faceson's supplemental interrogatory responses were incomplete, nonresponsive, and/or unclear. And Faceson still has not responded at all to Flat Branch's requests for admissions and documents. On August 9, Faceson filed a document titled "Exhibit A/B" that includes numerous certified mail receipts showing various dates from August 2023 to July 2024 that he (or his wife) ostensibly served something on Flat Branch or Flat Branch's counsel—perhaps in an attempt to show that he has participated in this case. (ECF 44.) Faceson, however, never filed a response to Flat Branch's motion for sanctions.

The discovery period ended on August 15.

7

## II. ANALYSIS

Federal Rule of Civil Procedure 41(b) authorizes the court to involuntarily dismiss a case if "the plaintiff fails to prosecute or to comply with these rules or a court order[.]" *See Olsen v. Mapes*, 333 F.3d 1199, 1204 (10th Cir. 2003) ("[T]he Rule has long been interpreted to permit courts to dismiss actions sua sponte for a plaintiff's failure to prosecute or comply with the rules of civil procedure or court's orders."). Dismissal under this rule generally operates as an adjudication on the merits. FED. R. CIV. P. 41(b). Likewise, other rules provide for dismissal as a sanction when a party refuses to participate in discovery, such as by failing to attend the party's own deposition or disobeying a court order to provide discovery. *See, e.g.*, FED. R. CIV. P. 37(d)(1)(A)(i) (providing for sanctions when a party fails to attend his own deposition); FED. R. CIV. P. 37(b)(2)(A)(v) (providing for dismissal as a sanction when a party fails to obey an order to provide or permit discovery, among other things); *see also* FED. R. CIV. P. 16(f)(1)(C) (providing for sanctions for failing to obey a scheduling order, including dismissal under Rule 37(b)(2)(A)(v)). "A district court undoubtedly has discretion to sanction a party for failing to prosecute or defend a case, or for failing to comply with local or federal procedural rules." *Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir. 2002).

Dismissal is appropriate in cases of willful misconduct. *See Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir. 1992). Before imposing dismissal as a sanction, the court must consider the non-exhaustive *Ehrenhaus* factors. *Id*. They include: (1) the degree of actual prejudice to defendants; (2) the amount of interference with the judicial process; (3) the litigant's culpability; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *Id.* at 920-21. "These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to

imposing dismissal as a sanction." *Id.* at 921.  "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." *Id.*

### A. Degree of Actual Prejudice to Flat Branch

The court turns first to the degree of actual prejudice to Flat Branch.  Flat Branch contends that it has been prejudiced insofar as "Flat Branch has wasted time and financial resources by trying to have the Plaintiff comply with the Scheduling Order, respond to the discovery requests, and comply with the Court's Order" compelling Faceson to respond to Flat Branch's discovery requests.  (ECF 43, at 3.)  It is clear from the record that Flat Branch has spent time and resources trying to get Faceson to participate in discovery—mostly, by trying to obtain responses to the discovery requests that Flat Branch served in mid-May.  When Faceson did not timely serve responses, Flat Branch followed up with Faceson and he supplemented his interrogatory responses.  However, those responses asserted several improper objections and provided incomplete answers, and Faceson did not respond at all to the requests for admissions and documents.  Flat Branch was then forced to file a motion to compel, which the court granted.  Faceson has since disobeyed the court's order to "fully and completely respond" to that discovery.  As a result, Flat Branch has little of the information it sought in initial written discovery, as Faceson still has not responded fully and completely to the interrogatories and has not responded at all to the requests for admissions and documents.  The court agrees that Faceson's failure to provide meaningful discovery responses has prevented Flat Branch from obtaining "basic information to discern the basis of [Plaintiff's] claims."  (ECF 43, at 3.)  With the discovery period now closed, Flat Branch is left in a bind, with little to no information to prepare its defenses or support its counterclaim and

no way to issue follow up discovery, prepare a proper dispositive motion, or generally prepare for trial.

In sum, the court finds that Flat Branch has been prejudiced by the denial of a full and fair opportunity to formulate its defenses to Faceson's claims and the support for its counterclaim. Furthermore, Faceson's refusal to respond to discovery or produce the documents requested has unquestionably stalled this case. However, this delay, "by itself, would not be sufficient to warrant dismissal absent other justifying circumstances." *Ehrenhaus,* 965 F.2d at 921 (citing *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1465 (10th Cir. 1988) ("isolated instances of noncompliance," without more, are generally insufficient to warrant dismissal)).[4]  Here, the prejudice to Flat Branch could be ameliorated if Faceson were to agree to provide the requested discovery and the court extended the case schedule. Moreover, the prejudice has been mitigated by the minimal advocacy required of the parties thus far. The parties have generally communicated with each other and the court by email or U.S. mail, and the court has held one scheduling conference by phone and one discovery conference by Zoom. Therefore, the court finds that this factor does not favor dismissal as a sanction.

### B. Interference with the Judicial Process

Faceson's failure to produce discovery has interfered with the judicial process. Faceson's noncompliance with Flat Branch's discovery requests has caused the court to spend unnecessary time and resources conducting a discovery conference and ruling two motions regarding Faceson's noncompliance.

---

[4] Flat Branch also points out that Faceson failed to participate in the Rule 26(f) planning conference with Flat Branch's counsel, the Rule 16 scheduling conference, and the discovery conference with the court on July 2. (ECF 43, at 2.) The court recognizes this non-participation, but is not persuaded that any of these failures necessarily caused prejudice to Flat Branch.

10

Faceson's failures have also undermined the orderly and efficient progress of this case. The scheduling order imposed a discovery deadline of August 15. That deadline has now passed, and Faceson still has not fully and completely responded to the written discovery. So the court is now going to have to determine at some point whether to reset the discovery deadline and subsequent settings triggered off that deadline, such as the deadline to submit the pretrial order, the date of the final pretrial conference and the dispositive-motion deadline. In short, Faceson's actions have potentially derailed the case schedule. Therefore, the court finds this factor weighs in favor of dismissal.

### C. Faceson's Culpability

Faceson has refused to comply with his discovery obligations without explanation, despite being in possession of most of the information and documents at issue when the discovery disputes began. Because Faceson did not participate in the July 2 discovery conference with the court or respond to either Flat Branch's motion to compel or its motion for sanctions, the court does not know whether circumstances beyond his control have prevented him from appearing at the conference as required or complying with court orders and procedural rules. The court repeatedly tried to contact Faceson to schedule a discovery conference, but he did not respond. He then emailed the court after business hours on July 1, apparently assuming that he could unilaterally avoid the discovery conference by saying he would not be able to attend the discovery conference on July 2 because both he and his wife were having non-specific "medical issues." In that email, he suggested that he "touch base" with the court "the middle of next week to discuss another date" for the conference. (ECF 40, at 3.) Based on this exchange, Faceson clearly anticipated these "medical issues" would not prevent him from interacting with the court the following week when he could have—and should have—been preparing a response to Flat Branch's motion to compel.

11

Faceson has not shown himself inculpable. Parties against whom harsh sanctions are sought have the burden to convince the court that "they are blameless victims." *See Jones v. Thompson*, 996 F.2d 261, 265 (10th Cir. 1993). Here, Faceson has demonstrated the opposite—namely, his intransigence in meeting his discovery obligations. Therefore, the court finds the culpability factor weighs in favor of dismissal.

### D.     Previous Warning

Turning to the fourth factor, the court's July 17 order warned Faceson that "he may be subject to further sanctions," including "an order dismissing his complaint," if he did not fully respond to Flat Branch's discovery requests by July 31 or respond to the court's order to show cause by August 7. (ECF 40, at 5.) Despite this warning, Faceson did not fully comply with the court's order compelling discovery, nor did he file a response to the court's show-cause order. Flat Branch's motion for sanctions also put Faceson on notice that he was facing sanctions for his nonparticipation in the case. (ECF 43, at 2-3 (citing this court's previous orders (ECF 22, 32, 37) directing Faceson to assume responsibility for the case).) Therefore, the court finds this factor weighs in favor of dismissal.

### E.     Efficacy of Lesser Sanctions

Finally, the court considers the fifth factor, which is the efficacy of lesser sanctions. Dismissal is a severe sanction and is not ordinarily warranted if lesser sanctions would be effective. *Ehrenhaus*, 965 F.2d at 922. Here, the court has not previously sanctioned Faceson, but the court has warned him that he may be subject to monetary sanctions (payment of Flat Branch's reasonable expenses incurred in making the motion to compel, including attorney fees) and dismissal sanctions. (ECF 40, at 4-5.) Although this warning did not prompt Faceson to comply with the

court's orders, the court is not persuaded—at least, not quite yet—that a lesser sanction than dismissal would not be effective.

## IV. CONCLUSION

Although some of the *Ehrenhaus* factors weigh in favor of dismissal, some do not. All in all, the court finds that the *Ehrenhaus* factors do not outweigh the judicial system's strong predisposition to resolve cases on their merits. Therefore, dismissal with prejudice is not an appropriate sanction at this time, and the court denies Flat Branch's motion for sanctions.

Even though Flat Branch is not yet entitled to dismissal under the *Ehrenhaus* factors, the court notes that Faceson has not really participated in the case for the last several months. In fact, once this case progressed past the pleadings stage (following Flat Brach's answer and counterclaim and the district judge's dismissal of defendant Craig), Faceson has done little other than file some miscellaneous documents and affidavits that he and his wife apparently wanted on the record to support Faceson's claims. (*See, e.g.*, ECF 18, 24, 25, 28.) And most of those documents and affidavits are signed by, and appear to have been submitted by, Mercy Faceson. (ECF 18, 24, 28.) Likewise, only Mercy Faceson appeared at the scheduling conference. (ECF 31, at 1.) This prompted the court to enter an order cautioning Faceson that this practice must stop and warning that "any document submitted for filing in this matter that is signed only by Mercy Faceson will not be docketed" because she is neither a named plaintiff nor an attorney admitted to practice before this court. (ECF 32.) Since the court issued this warning, Faceson has not appeared or filed anything with the court—other than his recent filing of "Exhibit A/B" containing various USPS certified mail receipts. (ECF 44.) He did not appear at the discovery conference regarding Faceson's deficient responses to Flat Branch's discovery requests, nor did he respond to Flat Branch's motion to compel responses to those discovery requests. He also did not comply with

the court's order on the motion to compel ordering him to fully and completely respond to those discovery requests (having waived his objections) or to the court's order to show cause why he should not be required to pay Flat Branch's reasonable expenses, including attorneys' fees, incurred in filing the motion to compel. Likewise, Faceson did not respond to Flat Branch's current motion for sanctions. By Faceson's inaction and utter failure to participate as required by the applicable rules of procedure, Faceson is on the verge of the court dismissing his case for lack of prosecution. And, given his apparent unwillingness to participate in the required discovery process, it may very well be that Faceson no longer wishes to pursue this case.

To allow Faceson one last opportunity to be heard on this issue, the court orders Faceson to show cause in writing why the court should not dismiss this case for lack of prosecution. Faceson's response must explain whether he wants to proceed with his case or dismiss it. If Faceson wants to proceed, he must explain how and when he will fulfill his discovery obligations to Flat Branch. Faceson's response must also acknowledge his obligations to the court to comply with the court's orders and rules of procedure. Faceson must file his written response to the court's show-cause order by **September 24, 2024**. If Faceson fails to file a written response to the court's show-cause order by **September 24, 2024**, the court will likely recommend that the district judge dismiss this case as a sanction. *See* FED. R. CIV. P. 37(b)(2)(A); *AdvantEdge Bus. Grp. v. Thomas E. Mestmaker & Assocs., Inc.*, 552 F.3d 1233, 1236 (10th Cir. 2009) (holding the court has "discretion to sanction a party for failing to prosecute or defend a case, or for failing to comply with local or federal procedural rules," including an order dismissing the case).

**IT IS THEREFORE ORDEREED** that defendant Flat Branch Mortgage, Inc.'s Motion for Sanctions (ECF 43) is denied.

**IT IS FURTHER ORDERED** that plaintiff Faceson must file a written response by **September 24, 2024**, to show cause why the court should not recommend that the district judge dismiss this case for failure to prosecute.

**IT IS FURTHER ORDERED** that the clerk's office send a copy of this order to plaintiff Faceson by regular and certified mail.

**IT IS SO ORDERED.**

Dated September 10, 2024, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
